WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DBSI, Inc., | No. CV-19-5830-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Gregory Oates, | |
| Defendant. | |

At issue is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer (Doc. 16, MTD) the Complaint (Doc. 1, Compl.) to which Plaintiff filed a Response (Doc. 22, Resp.) and Defendant file a Reply (Doc 26, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court will deny Defendant's Motion to Dismiss.

**I.     BACKGROUND**

In the Complaint, the operative pleading, Plaintiff DBSI, Inc. makes the following allegations, which the Court construes as true for the purpose of the Motion to Dismiss. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). From about October 2013 until March 20, 2019, Defendant Greg Oates was employed at DBSI, a corporation organized and existing under the laws of Arizona with its principal place of business in Arizona. DBSI provides design build services for banks and credit unions. During his time at DBSI, Oates entered into an Employee Confidentiality and Unfair

Competition Agreement ("Agreement") that contained an Arizona choice-of-law clause. The Agreement prohibits him from soliciting DBSI customers to do business with any DBSI competitors and using or disclosing any of DBSI's confidential or trade secret information.

While residing in and working from Texas, Oates served as a Regional Sales Manager for DBSI and oversaw a region of the United States that included Texas but not Arizona. Nevertheless, he worked with colleagues based in Arizona and made over fifty-two business trips to Arizona. As Regional Sales Manager for the region including Texas, Oates was DBSI's principal point of contact for its account with Woodforest National Bank, a Texas-based bank. As part of his role, Oates solicited, interacted with, and sold services to customers, prospective customers, and referrals. This position granted him significant access to confidential information, including lead lists, referrals, customer lists, business records, and other related materials.

Oates still resides in Texas but is now employed at LEVEL$^5$, LLC, a direct competitor of DBSI that provides the same services and uses the same sales structure as DBSI. At some time after Oates's resignation from DBSI, DBSI discovered an email from Woodforest that was clearly intended for Oates's LEVEL$^5$ email address but was mistakenly directed to Oates's DBSI email address. DBSI believes that Oates may have been diverting Woodforest business to LEVEL$^5$, and in its subsequent investigation DBSI discovered that Oates had forwarded a massive amount of DBSI's confidential and proprietary information to his personal email, including materials specifically pertaining to the Woodforest account.

In order to email the confidential information from his DBSI email account to his personal email account, Oates remotely accessed DBSI's servers located in Arizona. There, he obtained the confidential information which was developed in Arizona, much of which pertained to clients and jobs in Arizona. Oates contends not to have known the location of the servers. Oates allegedly used the confidential information, in violation of the Agreement, to his and LEVEL$^5$'s benefit.

On December 16, 2019, DBSI filed the Complaint in this action. DBSI alleges six claims against Oates: (1) Misappropriation of Trade Secrets, (2) Breach of Contract, (3) Breach of Covenant of Good Faith and Fair Dealing, (4) Breach of Fiduciary Duty, (5) Tortious Interference with Business Expectations, and (6) Unjust Enrichment. (Compl. at 9 ¶ 39 to 16 ¶ 91). Oates now moves to dismiss on the basis of lack of personal jurisdiction and improper venue. (MTD at 2.) In the alternative, Oates moves to transfer the action against him to the Eastern District of Texas. (MTD at 13).

## II. PERSONAL JURISDICTION

In order for a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). The party bringing the action has the burden of establishing that personal jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936)); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When a defendant moves, prior to trial, to dismiss a complaint for lack of personal jurisdiction, the plaintiff must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

Because there is no statutory method for resolving the question of personal jurisdiction, "the mode of determination is left to the trial court." *Data Disc,* 557 F.2d at 1285 (citing *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939)). Where, as here, a court resolves the question of personal jurisdiction upon motions and supporting documents, the plaintiff "must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Id.* In determining whether the plaintiff has met that burden, the "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc.*, 284 F.3d at 1019 (citation omitted).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Data Disc,* 557 F.2d at 1287. Courts recognize two bases for personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

Here, DBSI contends that the Court has specific jurisdiction over Oates. (Resp. at 2). Whether a court may exercise specific jurisdiction in a given case turns on the extent of the defendant's contact with the forum and the degree to which the plaintiff's suit is related to the defendant's contacts. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Ninth Circuit Court of Appeals uses the following approach to determine whether a court may exercise specific jurisdiction over a nonresident defendant: (1) the nonresident defendant must do some act in or consummate some

transaction with the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Data Disc*, 557 F.2d at 1287.

The plaintiff bears the burden of establishing the first two requirements of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff establishes the first two requirements, the burden shifts to the defendant to establish that the third requirement is not met. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). All three requirements must be met for the exercise of jurisdiction to comport with constitutional principles of due process. *Omeluk*, 52 F.3d at 270.

To meet the first element of the Ninth Circuit's three-part test—that the defendant purposefully directed activities at the forum state—the plaintiff must show the defendant "either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities towards the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802). The purposeful direction analysis is most commonly applied in cases alleging tortious conduct. *Mavrix Photo, Inc.*, 647 F.3d at 1228. Because misappropriation of trade secrets, breach of covenant of good faith and fair dealing, breach of fiduciary duty, tortious interference with business expectations, and unjust enrichment are torts or "tort-like cause[s] of action," purposeful direction is the proper analytical framework.[1] *Id.*

To determine whether the defendant's actions constitute purposeful direction, courts apply the "effects" test that was developed in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The effects test requires that "the defendant allegedly must have (1) committed an

---

[1] DBSI also alleges breach of contract, which is usually analyzed under the purposeful availment test, but the Court will resolve the question of Oates's contacts with Arizona by applying the purposeful direction analysis.

- 5 -

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo!*, 433 F.3d at 1206.

DBSI alleges and proffers evidence that Oates has committed an intentional act. According to the Complaint, during the time or after Oates terminated his employment with DBSI, Oates continued to access and misappropriate DBSI's trade secrets through improper means. (Compl. at 10 ¶¶ 44-46). He then disclosed those trade secrets and interfered with DBSI's business relationships. (Compl. at 11-12 ¶¶ 52-54, 15 ¶¶ 82-84). Thus, DBSI has sufficiently alleged Oates acted intentionally, meeting the first element of the purposeful direction effects test.

The requirement of express aiming is satisfied if the defendant's intentional act individually targeted the plaintiff, who is a forum resident. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (reasoning "the presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied"). Here, to misappropriate DBSI's trade secrets, Oates accessed DBSI's servers, which are located in Arizona. Oates asserts that he had no knowledge of the location of DBSI's servers. However, it is clear that Oates at least knew that DBSI was located in and operated out of Arizona because he worked with colleagues located in Arizona and made over fifty-two business trips to the state. While the visits are not suit-related conduct that would directly give the Court specific jurisdiction over Oates, it is conduct that evidences Oates's knowledge that DBSI was located in and operated out of Arizona.

Oates cites *Walden v. Fiore*, 571 U.S. 277, 284 (2014) and contends that none of his contacts with Arizona are suit-related, as is required to establish personal jurisdiction. (MTD at 6). Oates further cites to a number of cases, including *Walden*, to emphasize that "'[m]ere injury to a forum resident is not a sufficient connection to the forum.'" *Walden*, 571 U.S. at 290. However, the actions alleged here did not merely injure a resident of Arizona. Rather, these actions were aimed at an Arizona corporation and at the forum itself. When Oates accessed DBSI's servers in Arizona, he sent to himself confidential data that was created by DBSI in Arizona, much of which pertained to open jobs in Arizona.

Furthermore, this was in violation of the Agreement with the Arizona corporation. Oates used his employment with the Arizona business to access information stored in Arizona and used that information to compete directly with the Arizona business. As such, the Court finds that Oates's conduct was aimed at the forum.

DBSI also alleges adequate evidence that Oates's intentional acts caused harm he knew would likely be suffered in the forum state. "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Yahoo!*, 433 F.3d at 1207. A corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F3d. 1066, 1079 (9th Cir. 2011). DBSI's principal place of business is Arizona, and thus the third and final step of the effects test is easily satisfied.

DBSI alleges adequate facts to demonstrate that Oates's acts give rise to its claims. A court may exercise specific jurisdiction where the defendant's specific contacts have a substantial connection to the forum state and give rise to the claim in question. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984). Here, Oates entered into an employment relationship with an Arizona corporation and used that relationship to allegedly access and misappropriate proprietary data stored in Arizona. Moreover, Oates allegedly violated the Agreement entered into with the Arizona corporation. Therefore, DBSI has adequately alleged that Oates's misappropriation of trade secrets in Arizona gives rise to its claims.

The final element of the specific jurisdiction analysis requires that the exercise of jurisdiction be reasonable; that is, it must comport with "traditional notions of fair play and substantial justice." *Rio Props., Inc.*, 284 F.3d at 1021 (applying the requirements of *Int'l Shoe Co.*, 326 U.S. at 316). In determining reasonableness, the Ninth Circuit considers seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most

efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Rio Props., Inc.*, 284 F.3d at 1021 (citing *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993)); *see also Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995). A court must balance all seven factors, as no single factor is dispositive. *Rio Props., Inc.*, 284 F.3d at 1021 (citing *Core-VentCorp.*, 11 F.3d at 1488); *see also Ziegler*, 64 F.3d at 475.

Significantly, once the first two prongs of the specific jurisdiction analysis have been established, "the forum's exercise of jurisdiction is presumptively reasonable." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 386 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). "To rebut that presumption, [the] defendant 'must present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." *Shute*, 897 F.2d at 386 (quoting *Burger King*, 471 U.S. at 477); *see also Boschetto*, 539 F.3d at 1016 (same).

Oates has not presented a compelling case that exercise of jurisdiction in Arizona would be unreasonable. The first factor weighs in favor of DBSI because Oates purposefully directed his actions at Arizona when he entered into an employment relationship with an Arizona corporation and used that relationship to misappropriate information stored in Arizona. The second factor weighs slightly in favor of Oates. Although he resides in Texas, the Ninth Circuit recognizes that "[m]odern advances in . . . transportation have significantly reduced the burden of litigation in another [forum]." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). The third factor weighs in favor of DBSI because the Agreement is governed by Arizona law. The fourth factor weights in favor of DBSI because Arizona has a strong interest in protecting its corporations. The fifth factor is neutral because, although some witnesses are based in Texas, an Arizona court will more efficiently resolve a case of Arizona law. The sixth factor weighs in favor of DBSI because DBSI is incorporated in Arizona. The seventh factor is neutral because the existence of an alternative forum is only an issue if jurisdiction

1  in the forum is shown to be unreasonable. In weighing all seven factors, the Court finds
2  that exercising jurisdiction in Arizona would not be unreasonable.

3  DBSI has made a *prima facie* showing of jurisdictional facts, and all three prongs
4  of the specific jurisdiction test have been satisfied. Thus, the Court's exercise of personal
5  jurisdiction over Oates comports with constitutional principles of due process and the
6  District of Arizona has personal jurisdiction in this matter.

7  **III.  VENUE**

8  In the alternative, Defendant Oates moves to transfer venue to the Eastern District
9  of Texas, asserting that venue is improper in Arizona under 28 U.S.C. § 1391. Under that
10 statute, except as otherwise provided by law, venue is proper in (1) a judicial district in
11 which any defendant resides, if all defendants are residents of the State in which the district
12 is located, (2) a judicial district in which a substantial part of the events or omissions giving
13 rise to the claim occurred, or a substantial part of property that is the subject of the action
14 is situated, or (3) if there is no district in which an action may otherwise be brought as
15 provided in this section, any judicial district in which any defendant is subject to the court's
16 personal jurisdiction with respect to such action. 28 U.S.C. § 1391(a)-(b).

17 Defendant argues that venue is not proper in Arizona because Defendant resides in
18 Texas. Defendant further argues that venue is not proper in Arizona because a substantial
19 part of the events giving rise to the claim occurred in Texas. However, as the Court has
20 already established, a substantial part of the events giving rise to the claim occurred in
21 Arizona. Defendant entered into an employment agreement with an Arizona corporation
22 and used that relationship to allegedly misappropriate confidential information stored in
23 Arizona. The District of Arizona is a proper venue for this case.

24 . . . .
25 . . . .
26 . . . .
27 . . . .
28 . . . .

**IT IS THEREFORE ORDERED** denying Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion to Transfer (Doc. 16).

Dated this 14th day of September, 2020.

Honorable John J. Tuchi
United States District Judge